IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2022

## BRANDON NATHANIEL MERRITT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. C1704303, 17 02688   Lee V. Coffee, Judge**

_____

### No. W2021-01448-CCA-R3-PC
_____

The Petitioner, Brandon Nathaniel Merritt, pled guilty to attempted rape and sexual battery and agreed to an effective sentence of six years.  Pursuant to the plea agreement, the trial court was to determine how the sentence would be served.  After the trial court imposed a sentence of full confinement, the Petitioner timely filed a petition for post-conviction relief asserting that he received the ineffective assistance of counsel regarding his guilty pleas and at his sentencing hearing.  He also asserted that his guilty pleas were not knowingly and voluntarily entered.  After an evidentiary hearing, the post-conviction court denied the petition for post-conviction relief.  On appeal, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the Court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Brandon Nathaniel Merritt.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Fouche, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# FACTUAL BACKGROUND

## A. GUILTY PLEAS

In May 2017, the Shelby County Grand Jury indicted the Petitioner for two counts of sexual battery and one count of attempted rape. On March 2, 2018, the Petitioner pled guilty to the offenses of sexual battery and attempted rape, with the other charge being dismissed pursuant to a plea agreement.

At the guilty plea hearing, the State discussed the basic terms of the proposed agreement. First, the State recommended that the Petitioner be sentenced as a Range I, standard offender and receive concurrent sentences of two years for the sexual battery conviction and six years for the attempted rape conviction. Next, the State noted that the parties asked for a separate sentencing hearing for the trial court to decide the manner in which the sentence would be served. Finally, the State affirmed that the Petitioner would be required to register as a violent sex offender and would be subject to community supervision for life.

Upon questioning by the trial court, the Petitioner agreed that he had graduated from college and that he could read and write. He also agreed he had signed the written plea agreement. The Petitioner said that he had no complaints about plea counsel and that plea counsel reviewed discovery with him and went "over those things that the State would try to prove" if the case went to trial.

As relevant to this appeal, the trial court informed the Petitioner that the offense of attempted rape was a violent sexual offense and that he would be required to register as a violent sex offender due to that conviction. The trial court also informed the Petitioner that he would be placed on community supervision for life after serving his sentences. The Petitioner acknowledged he understood the terms of the plea agreement and the rights he was waiving by entering his guilty pleas.

## B. SENTENCING HEARING

The trial court held a sentencing hearing on June 1, 2018, to determine the manner in which the six-year sentence would be served. At the hearing, the State called the victim of the attempted rape. She testified that on the morning of January 6, 2017, she returned home from driving her son to work. While getting out of her car, she noticed a white truck stopped in the middle of the street in front of her house. After she went inside the house

with her dog, she saw the Petitioner get out of the truck and start "messing . . . under the hood." The Petitioner then walked up her driveway.

The victim opened her door to ask if she could help, and the Petitioner asked her for booster cables. She could not find booster cables, and the Petitioner thanked her for trying to help. He started walking back down her driveway.

However, upon nearly reaching the sidewalk, the Petitioner turned around and walked back to the house. Because her dog was trying to get outside, the victim stepped onto the front porch and asked if she could do something else to help. The Petitioner offered to pay her a couple of dollars for gas if she agreed to drive him to the store, saying that he did not know what was wrong with his truck. She "started feeling a little weird" and said she would call her neighbor to help. The Petitioner agreed, and she made the call.

The Petitioner repeatedly thanked her for her help and said he would wait in his truck so she could go inside. As she turned to go inside the house, he grabbed her around the throat and pulled her behind her car, "trying to get [her] to the passenger side of [her] car." Additionally, he was "pulling [her] pants down, and grabbing at [her]."

Eventually, the victim managed to escape and ran inside her house. She called her neighbor and told him to follow the Petitioner. She opened her door and yelled to the Petitioner that he was going to jail. The Petitioner responded either, "'You white b***h,' or 'You crazy b***h.'" He then walked down the driveway as if nothing had happened, started his truck, and left. The victim said that she had been "scared to death" ever since the offense, noting that "[h]e had no remorse, no anything." She asked the court to "please lock him up."

On the Petitioner's behalf, plea counsel submitted letters from Samantha Hammonds and Amanda Young, counselors with Professional Care Services of West Tennessee who had been working with the Petitioner; Caleb Hollingsworth, who had worked with the Petitioner in the insurance business and vouched for the Petitioner's character; and a letter from David Leavell, a senior pastor at Millington First Baptist Church, who stated that the Petitioner had been assigned to power wash exterior walkways and entrances at the church and that he "provided exceptional services" to the church.

Brad Merritt, the Petitioner's father, testified that the charges against the Petitioner shocked him. Mr. Merritt said that the Petitioner was "driven and disciplined," that he had been "raised in church," and that he had "a heart for service." Despite having a "small

frame," the Petitioner had excelled in sports in school. The Petitioner was deeply affected when his parents divorced in his late teenage years.

The Petitioner also testified at the sentencing hearing. He stated that he was twenty-nine years old. Although he had been married for six years, the Petitioner noted that his wife was in Puerto Rico because of a "career opportunity." He testified that he was self-employed in a concrete business and that he worked to "resurface pool decks, stain concrete, epoxy coating, [and] things of that nature."

To seek help for his "psychological issues," the Petitioner stated that he met periodically with his pastor, Mr. Leavell and that he received treatment at Professional Care Services. He said that the treatment was helping and that he was also attending "sex and love addiction" meetings.

The Petitioner apologized to the victim of the attempted rape, believing that she and her family felt anger and fear. He also apologized to the court "for adding to the problems."

On cross-examination, the Petitioner acknowledged that "[t]his isn't the first time [he had] done this" and mentioned "another instance" of "[j]ust flirting with a female." He explained that due to his "heavy pornography addiction," he "got into this habit of flirting with random women at gas stations or stores" and convincing them to take a "selfie" with him. As he was "flirting," he would touch the woman's "rear end" without her permission. During his psychosexual evaluation, he said that he had performed the "selfie routine" with women at least ten times. He admitted that he pled guilty to a simple assault after purposefully bumping into a woman "with [his] groin area" in a Kroger grocery store.

The Petitioner acknowledged that he had been arrested previously for marijuana possession, public intoxication, disorderly conduct, and driving under the influence. The Petitioner conceded that it would be difficult for him to continue being in his "decorative concrete" business once he was on the sex offender registry and that he would probably have to find a new job.

The Petitioner conceded that on the same day of the attempted rape, "[t]here was a woman walking down the street that I stopped and talked to and was flirting with." The woman who was the victim of the sexual battery conviction screamed and ran away. Thereafter, the Petitioner "started to head home," but he saw the victim of the attempted rape leaving Walgreens, and he followed her home. He agreed with her version of events, saying that he had "no desire to go against anything that she said[.]"

Upon questioning by the trial court, the Petitioner acknowledged that his prior assault conviction was originally charged as sexual battery and that he was placed on

probation for that conviction. The Petitioner said that he successfully completed the probationary sentence.

In sentencing the Petitioner, the trial court found that the Petitioner had committed the two offenses on the same day while on probation for similar conduct, namely the sexual battery charge that was reduced to an assault conviction. The trial court noted that the Petitioner testified at the sentencing hearing "that there [was] only one other instance in which he has engaged in molesting women[.]" However, the Petitioner acknowledged during his psychosexual evaluation that "he's basically a serial molester of women." The trial court found the inconsistency to be indicative of the Petitioner's lack of truthfulness.

While the trial court acknowledged that the Petitioner was considered a suitable candidate for probation, the court found that the suitability was outweighed by the Petitioner's committing the two offenses while on probation for a similar offense, his history of misdemeanor convictions, and his history of criminal behavior by molesting women. The court also found a need to deter the Petitioner from continuing to commit similar offenses. The court noted that the Petitioner failed to report to Pretrial Services several times and that he tested positive for alcohol on at least two occasions, indicating he would be unable to abide by the terms of release. Accordingly, the trial court ordered the Petitioner to serve the balance of his six-year sentence in confinement. The Petitioner did not appeal his sentence.

## C. POST-CONVICTION PROCEEDINGS

On March 31, 2019, the Petitioner timely filed a pro se petition for post-conviction relief. After counsel was appointed, the Petitioner filed an amended petition alleging, in relevant part,[1] that his plea counsel was ineffective by (1) failing to explain the difference between community supervision for life, the sex offender registry, and the violent sex offender registry, including that he could not be "removed from community supervision"; (2) failing to explain the elements of the offenses that the State was required to prove at trial to obtain a conviction such that, consequently, he was unable to make an informed decision as to whether to plead guilty or proceed to trial; and (3) by misrepresenting the maximum possible sentence of confinement that he would receive as a result of his plea. The Petitioner also asserted that plea counsel was ineffective during the sentencing hearing by (1) failing to introduce a character reference letter from his pastor and (2) failing to clarify to the trial court that he had attended all required drug screens. Finally, the

---

[1] Because any additional issues originally raised in the petitions have not been raised on appeal, we do not address those additional issues further. *See Lewis v. State*, No. W2020-00653-CCA-R3-PC, 2021 WL 3140352, at *5 (Tenn. Crim. App. July 26, 2021).

Petitioner contended that due to the ineffectiveness of counsel, his guilty pleas were not knowingly and voluntarily entered.

### 1.    Plea Counsel's Testimony

At the post-conviction hearing, plea counsel testified that he had practiced law for thirty-eight years and that he had a "general practice with the emphasis on criminal defense." Plea counsel began representing the Petitioner in general sessions court and continued to represent him after the case was bound over to the criminal court. Counsel noted that the Petitioner was originally charged with aggravated kidnapping, attempted rape, and sexual battery, and he was later also charged with a second count of sexual battery.

According to plea counsel, the Petitioner initially denied any involvement in the offenses. However, after plea counsel obtained information from the State that was inconsistent with the Petitioner's version of events, the Petitioner admitted to plea counsel that he had committed the offenses. The Petitioner also explained that he had lied to prevent his family from learning about his guilt.

While the case was pending in the general sessions court, plea counsel and the State discussed possible resolutions to the case. According to plea counsel, the Petitioner wanted to avoid incarceration because he was self-employed and needed to provide for his wife. The State proposed that the Petitioner accept a plea of guilty to the offenses of attempted rape and sexual battery. The State further proposed that the Petitioner receive concurrent sentences of six years for the attempted rape conviction and two years for the sexual battery conviction. As plea counsel noted, if the Petitioner accepted this plea, then the State would not seek a separate indictment for the offense of aggravated kidnapping, which would have exposed the Petitioner to a minimum sentence of eight years' incarceration without the possibility of parole.

Plea counsel told the Petitioner that the State's offer would permit the Petitioner to "petition the Court for extraordinary relief, probation, whatever the case may be." Plea counsel explained to the Petitioner the factors the trial court would consider when deciding whether to grant an alternative sentence to incarceration, such as the nature of the offense, the prior history of similar conduct, whether steps had been taken to address the issues that led to the charges, employment history, criminal history, and truthfulness.

Plea counsel further advised the Petitioner that it was "very difficult" to get probation "any time you've got multiple victims and you've got some history." Plea counsel thought it was more likely the Petitioner would get split confinement than full probation. Plea counsel cautioned the Petitioner, "[E]ven with that, if the Judge doesn't

believe you're sincere, if the Judge doesn't believe your testimony, if you're not credible, then you're not going to get the relief. And my recollection of the hearing, [the Petitioner] did not present himself particularly credible." Plea counsel explained to the Petitioner that he was not guaranteed to receive probation or split confinement.

Plea counsel testified that he also explained the elements of attempted rape and sexual battery to the Petitioner. Plea counsel also explained to the Petitioner that the State had evidence to support the charges against him, including the aggravated kidnapping charge. Plea counsel never thought the Petitioner misunderstood his options or what he was facing.

Plea counsel also advised the Petitioner that attempted rape was "categorized as a violent sexual offense because rape is a violent sexual offense . . . , [and that it] requires lifetime registry if convicted." He explained that sexual battery was a sexual offense that required the Petitioner to register as a sexual offender but that the Petitioner could "get off after 10 years." Plea counsel advised the Petitioner what the sexual offender "registry required and what offenses were required to be registered" and "told him that upon conviction of a rape or an attempted rape, that he would be supervised for life under current Tennessee law."

Plea counsel further advised the Petitioner that, if he were convicted of a violent sexual offense, then his community supervision was "going to be for life" and that he would not be able to "get off of it after some period of time." Plea counsel said that it was never an option to remove the requirement of community supervision for life from the guilty pleas.

Plea counsel acknowledged that he had received two letters from David Leavell, the pastor at Millington First Baptist Church: one dated July 12, 2017, and the other dated July 18, 2017. Plea counsel submitted the July 12 letter at the Petitioner's sentencing hearing because it reflected Mr. Leavell had known the Petitioner for eight years and had "counseled him in the Challenging Seasons of Life." Although the second letter referred to the Petitioner's having volunteered to perform community service work at church, plea counsel did not submit this letter because he thought it was "superfluous." Plea counsel did not recall anything regarding the Petitioner's failure to report for drug screens or failing drug screens being used against him at the sentencing hearing.

### 2.      Petitioner's Testimony

The Petitioner also testified at his post-conviction hearing. As to the issues arising from his original plea, the Petitioner testified that he told plea counsel that he was "struggling" with pleading guilty to attempted rape because he did not try to rape anyone.

The Petitioner also said that plea counsel never discussed the elements that the State needed to prove in order to convict the Petitioner of the charges at trial. The Petitioner did not recall meeting with plea counsel on multiple occasions. The Petitioner said that the only time he and plea counsel spoke "was on the phone right before court or out in the hallway right before court, other than the two times when I met in his office with my wife."

The Petitioner also denied that plea counsel explained the possible charge of aggravated kidnapping to him. He agreed, though, that plea counsel informed him that the aggravated kidnapping would be dismissed if he pled guilty to the other charges and that probation could be considered.

According to the Petitioner, plea counsel advised the Petitioner that a trial would not end in the Petitioner's favor. Plea counsel said, "[I]f you do go to trial, you have two victims in your case, it's not going to go in your favor, this is the deal."

The Petitioner testified that when his case was in the general sessions court, plea counsel told him about the terms of the plea proposed by the State, including that he would receive a six-year sentence and be permitted to argue for probation. According to the Petitioner, plea counsel "initially told [him] that worst case, you'll get six months split confinement[.]" After several court dates, however, plea counsel began to say that "six months split confinement would be a best-case scenario."

The Petitioner confirmed that the trial court told him at the guilty plea hearing that there was no guarantee the Petitioner would receive probation. The Petitioner also agreed that he understood he was not guaranteed to receive probation.

The Petitioner also testified that plea counsel told him that "certain charges classify as the . . . non-violent sex offender, and that this criminal attempt rape charge is a violent sex offense." After the Petitioner asked plea counsel to explain the difference, plea counsel said, "[T]hey're the same thing. The only thing is you have to wait 15 years to get off instead of 10. . . . [I]t's called for life, but you can petition to get off in 15 years[.]"

According to the Petitioner, plea counsel explained the difference between the types of sex offender registries and said that the Petitioner could petition to be removed from the violent sex offender registry and community supervision for life after fifteen years. As a result, the Petitioner believed that supervision on the sex offender registry was the "same thing" as community supervision for life.

However, the Petitioner testified that, after he was sent to the Penal Farm, he learned that the sex offender registry and community supervision for life were "two separate things" with their own agencies, fees, and rules. He also learned for the first time that he

could not be removed from the violent sex offender registry. The Petitioner testified that had he known this information before pleading guilty, he would not have chosen "to sign up for the rest of my life[.]"

The Petitioner acknowledged that the trial court informed him at the guilty plea hearing of the differences between community supervision for life and the sex offender registry, that the Petitioner had to register as a violent sex offender, and that it never told the Petitioner that supervision could be ended at any point. However, the Petitioner testified that "[a]t that time, all I had was [plea counsel's] voice in my head saying, it's called for life but you can petition to get off in 15 years, you know."

Finally, the Petitioner acknowledged that he told the trial court that he did not have any problems with plea counsel but explained that his dissatisfaction with plea counsel developed "[w]hen I was incarcerated and I started doing some reading." The Petitioner also confirmed that plea counsel told him that it was the Petitioner's decision whether to plead guilty, and plea counsel did not force him to plead guilty.

As to the issues arising from the sentencing hearing, the Petitioner identified two letters from his pastor, David Leavell. According to the Petitioner, plea counsel submitted the letter "about pressure-washing [at the sentencing hearing], but not the one about getting treatment." When the Petitioner asked why he did not submit the second letter, plea counsel responded that "it wouldn't have mattered."

The Petitioner also testified that the State argued at the sentencing hearing that the Petitioner did not report for drug screening as he should have done. The Petitioner explained that he was required to take a random screening once a month and that he was supposed to call in every day. On two occasions, though, he was randomly selected to have two drug screens in the same month. According to the Petitioner, he called "Pre-trial Services" and asked if he needed to take the second test, and he was told, "[N]o, as long as you've been once that month, you don't have to go a second time."

The Petitioner further testified that he "had all the receipts" showing that he appeared for the drug screens, but that plea counsel told him "that wouldn't have made a difference." According to the Petitioner, however, he believed that the trial court "weighed heavily" its belief that it could not "trust [the Petitioner] to follow the rules of probation."

### 3.    Post-Conviction Court's Denial of the Petition

Following the hearing, the post-conviction court denied the petition for post-conviction relief. The post-conviction court found that the Petitioner "is not a truthful person," and the court specifically credited the testimony of plea counsel and resolved "all

credibility issues against the petitioner." The post-conviction court also noted that the Petitioner "had not been truthful[ and] that he had not told the [trial court] the truth" at the sentencing hearing.

The post-conviction court recognized that plea counsel "represented [the Petitioner], not only well, but [that] he did an exceptional job . . . ." The court did not believe that the Petitioner met with plea counsel "only a handful of times." Instead, the court noted that plea counsel convinced the State not to indict the Petitioner for aggravated kidnapping, which permitted the Petitioner an opportunity to argue for probation with a lesser sentence.

Specifically with respect to issues of punishment, the post-conviction court discredited the Petitioner's statement that plea counsel promised "a six month split confinement at wors[t]." Instead, the post-conviction court noted that the Petitioner had been advised by the trial court that he would be required to register as a violent sex offender and that he would be subject to lifetime supervision as a result of the plea. The court also observed that the Petitioner was told by the trial court that "there were no guarantees" that the Petitioner "would receive a sentence of probation or split confinement." The court also identified the reasons for the sentence of confinement as including that the offenses involved multiple victims, that the Petitioner was then on probation, and that he had a history of sexually assaulting women.

Finally, with respect to the Petitioner's claim that his plea was unknowing and involuntary, the post-conviction found that the Petitioner failed to prove his claim by clear and convincing evidence. The court observed that, during the original plea hearing, the Petitioner affirmed that he read the plea agreement and that plea counsel explained both the nature of the charges and the ranges of punishment. The post-conviction court also recognized that the Petitioner was advised by the trial court of the constitutional rights he was waiving by entering into a plea, including the right to a trial by jury, the right to confront witnesses, and the privilege against self-incrimination. The court found that the Petitioner "repeatedly assured the trial court that he understood his rights and the consequences of the plea."

The post-conviction court also found that the Petitioner "repeatedly answered that he understood his rights and the proceedings, acknowledged that he wanted to go forward, and confirmed that his pleas were knowingly and voluntarily entered." The post-conviction court found that the Petitioner "admitted that he chose to enter a guilty plea" and that he "indicated that he answered truthfully at the guilty plea submission hearing." The Petitioner told the trial court "that the decision to enter this guilty plea was made without any threats, force, promises, or coercion."

For those reasons, the post-conviction court denied the post-conviction petition, finding that plea counsel was not deficient and that the Petitioner was not prejudiced by

any alleged deficiency. After a written order was entered on November 9, 2021, the Petitioner filed a timely notice of appeal on December 8, 2021. We affirm the judgment of the post-conviction court.

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). As our supreme court has made clear,

> Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that all criminal defendants "shall enjoy the right . . . to have the [a]ssistance of [c]ounsel." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). A petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under

the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this Court must look to "'all the circumstances'" to determine whether counsel's performance was reasonable and then objectively measure this performance against "the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that counsel's performance "'render[ed] the result of the trial unreliable or the proceeding fundamentally unfair.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, the petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694). "In order to establish prejudice in the context of a guilty plea, a petitioner must show by a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted upon going to trial." *Taylor v. State*, 443 S.W.3d 80, 84-85 (Tenn. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Because a post-conviction petitioner bears the burden of establishing *both* deficient performance and resulting prejudice, "a court need not address both concepts if the petitioner fails to demonstrate either one of them." *Garcia*, 425 S.W.3d at 257. Indeed, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, that course should be followed." *Strickland*, 466 U.S. at 697; *see Phillips*, 647 S.W.3d at 401 ("The petitioner must prove sufficient facts to support both the deficiency and prejudice prongs of the *Strickland* inquiry—or, stated another way, the post-conviction court need only determine the petitioner's proof is insufficient to support one of the two prongs to deny the claim.").

Importantly, when considering a claim of ineffective assistance of counsel, this Court begins with "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions," *Davidson*, 453 S.W.3d at 393, and "[t]he petitioner bears the burden of overcoming this presumption," *Kendrick*, 454 S.W.3d at 458. This Court will "not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172 (Tenn. Crim. App. 2011) (citation omitted). Of course, "the fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad*, 938 S.W.2d at 369. However, this Court will give deference to the tactical decisions of counsel only if counsel's choices were made after adequate preparation of the case. *Moore*, 485 S.W.3d at 419.

As we have noted, the Petitioner alleges that his plea counsel was ineffective by (1) failing to explain the difference between community supervision for life, the sex offender registry, and the violent sex offender registry, including that he could not be "removed from community supervision"; (2) failing to explain the elements of the offenses that the State was required to prove at trial to obtain a conviction such that, consequently, he was unable to make an informed decision as to whether to plead guilty or proceed to trial; (3) misrepresenting the maximum possible sentence of confinement that he would receive as a result of his plea; (4) failing to introduce a character reference letter from his pastor at his sentencing hearing; and (5) failing to clarify to the sentencing court that he had attended all required drug screens. The State argues that the Petitioner has failed to show that he received the ineffective assistance of counsel. For the reasons given below, we agree with the State.

### 1.    Plea Counsel's Advice as to Lifetime Supervision

The Petitioner first argues that plea counsel rendered ineffective assistance by failing to give accurate advice as to the sex offender registry and community supervision

- 13 -

for life requirements of his guilty plea. He maintains that if he had known the details about the registry and community supervision for life, he would not have pled guilty.

"The Tennessee sexual offender registration act requires persons convicted of a sexual offense or violent sexual offense to provide to law enforcement officials certain regularly updated information, including the offender's residence, employment, electronic mail or other internet identification, and other personal information." *Ward v. State*, 315 S.W.3d 461, 468 (Tenn. 2010) (footnote omitted). Our supreme court has held that the plain language of the statute "expresses a nonpunitive intent to protect the public" and that, according to "the General Assembly, the registration requirement does not inflict additional punishment . . . nor does it alter the range of punishment." *Id.* at 470.

Importantly, the registration requirements are a collateral consequence of a guilty plea. *Id.* at 472. As such, a trial court's failure to advise regarding the sex offender registration requirement does not render a guilty plea constitutionally invalid, although, clearly, the better practice is for a trial court to advise a defendant "that a consequence of pleading guilty to an offense requiring sex offender registration is that the defendant must register as a sex offender[.]" *Id.* However, "an additional sentence of lifetime community supervision is a direct and punitive consequence of which a defendant must be informed in order to enter a knowing and voluntary guilty plea." *Id.* at 475.

The Petitioner specifically argues that, if his post-conviction testimony were taken as true, then it would establish that he misunderstood the requirements of the sex offender registry and community supervision for life. He states that he thought he could be removed from the sex offender registry after ten years and the violent sex offender registry after fifteen years. He further states that he did not know community supervision for life was a separate requirement because he thought it was "the same thing" as the sex offender registry until after he was "incarcerated at the [P]enal [F]arm." However, the post-conviction court explicitly discredited the testimony of the Petitioner and accredited the testimony of plea counsel. Plea counsel testified that he advised the Petitioner of the requirements of the sex offender registry and community supervision for life.

Additionally, the post-conviction court observed that the trial court ensured that the Petitioner was aware of the requirements of the sex offender registry and community supervision for life prior to the entry of the guilty plea. We are bound by the post-conviction court's determinations of credibility unless the preponderance of the evidence is to the contrary. We may neither "re-weigh or re-evaluate the evidence," nor "substitute [our] own inferences for those drawn by the post-conviction court." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). Upon our review of the record, the evidence does not preponderate against the credibility findings made by the post-conviction court. Accordingly, the Petitioner has failed to establish either that plea counsel was deficient or

- 14 -

that he was prejudiced by any alleged deficiency. The Petitioner has failed to prove ineffective assistance of counsel in this regard.

### 2. Plea Counsel's Advice as to Offense Elements

The Petitioner next argues that his plea counsel was ineffective by failing to advise him of what the State must prove at trial to obtain a conviction. According to the Petitioner, he "struggle[ed]" with pleading guilty to the offense of attempted rape because he "didn't try to rape anybody." The Petitioner argues that, without information about what the State would be required to prove at a trial, he did not understand what options were available to him.

The post-conviction court discredited the Petitioner's testimony that plea counsel did not explain the elements of the offenses to him, finding that plea counsel adequately explained the elements of the offenses and the proof the State had against the Petitioner. The post-conviction court observed that the Petitioner's main concern was the possibility of probation and the avoidance of a sentence of incarceration and that had the Petitioner proceeded to trial, he would have faced an additional charge of aggravated kidnapping, a conviction of which would have foreclosed any opportunity for probation. Plea counsel testified that the Petitioner understood the charges he was facing and his options. The evidence does not preponderate against the post-conviction court's findings that plea counsel was not deficient and that the Petitioner was not prejudiced by any alleged deficiency. The Petitioner is not entitled to relief in this regard.

### 3. Plea Counsel's Advice as to the Sentence

The Petitioner next argues that plea counsel was ineffective by advising him that, in a "wors[t] case scenario," he would have to serve a maximum of six months in confinement as a result of his guilty pleas. He argues that if his post-conviction testimony were taken as true, then the difference between a six-year sentence and a six-month, split confinement sentence would itself show he would not have pled guilty had he "been aware of what he was realistically looking at in his case with sentencing[.]"

However, three issues exist with the Petitioner's argument. First, the Petitioner himself acknowledged at the post-conviction hearing that he knew he was accepting a sentence of six years and that, while he would be able to petition the trial court for probation, an alternative sentence was not guaranteed. Second, plea counsel's credited testimony showed that he did not guarantee that the Petitioner would be granted probation, especially given the Petitioner's credibility issues. Finally, the transcript from the plea

hearing shows that the trial court specifically warned the Petitioner prior to the plea that probation was not guaranteed.

The evidence does not preponderate against the post-conviction court's findings that plea counsel did not perform deficiently and that the Petitioner was not prejudiced by plea counsel's performance. The record also supports the post-conviction court's determination that the Petitioner failed to prove that counsel was ineffective in his advice about the sentence. The Petitioner is not entitled to relief in this regard.

### 4.    Character Reference Letter

The Petitioner also contends that plea counsel was ineffective at his sentencing hearing by failing to introduce a character reference letter written by his pastor. We acknowledge that the letter is in the record; however, the Petitioner's brief contains no argument on this issue. He does not argue, for example, how he believes that the letter was relevant to sentencing, nor does he identify how the outcome of his sentencing hearing would have been different had this letter been introduced as an exhibit. Under these circumstances, we conclude that this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues unsupported by argument . . . or appropriate references to the record will be treated as waived in this court.").

### 5.    Petitioner's Reporting for Pretrial Supervision

Finally, the Petitioner argues that plea counsel was ineffective by failing to clarify for the trial court that he had reported for all required drug screens. The Petitioner argues that the trial court found that while under the supervision of Pretrial Services, the Petitioner failed to report several times and that this finding influenced the trial court's decision to deny alternative sentencing.

However, the post-conviction court found that the Petitioner was "not a truthful person" either at the post-conviction hearing or at the sentencing hearing. Specifically, the post-conviction court observed that the Petitioner told conflicting stories to the trial court and to the person conducting the psychosexual evaluation regarding how many women he had previously molested.

The post-conviction court also noted that the Petitioner had violated his pretrial release by testing positive for alcohol. Plea counsel had cautioned the Petitioner that his truthfulness with the trial court was a crucial factor in the court's deciding whether to grant the Petitioner probation. The post-conviction court found that even if the Petitioner had

offered this "clarifying information," it would not have caused the trial court to look more favorably on the Petitioner.

To bolster his argument, the Petitioner argues on appeal that he had "receipts" showing that he reported for all drug screens. However, the Petitioner did not offer these receipts as an exhibit for the post-conviction court's consideration. This Court has specifically cautioned that

> [i]f a petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to argue a legal issue or present certain evidence, either testimony or exhibits, a repeat of such failure at the post-conviction hearing will most likely result in the failure to succeed on a claim of ineffective assistance of counsel.

*Grimes v. State*, No. W2018-01665-CCA-R3-PC, 2020 WL 249228, at *13 (Tenn. Crim. App. Jan. 16, 2020), *perm. app. denied* (Tenn. Aug. 5, 2020); *see Pilate v. State*, No. W2017-02060-CCA-R3-PC, 2018 WL 3868484, at *5 (Tenn. Crim. App. Aug. 14, 2018) ("Failure to present the documents at the post-conviction hearing makes it nearly impossible for Petitioner to show that trial counsel's deficient performance in failing to obtain or introduce the document at trial prejudiced the defense."). The post-conviction court found that the Petitioner failed to prove that plea counsel performed deficiently and that he failed to prove prejudice from any alleged deficiency. The evidence does not preponderate against the post-conviction court's findings. The post-conviction court did not err in denying the Petitioner's ineffective assistance of counsel claim based upon plea counsel's failure to clarify to the trial court that the Petitioner reported for drug screens.

## B.     KNOWING AND VOLUNTARY GUILTY PLEA

The Petitioner next argues that he did not plead guilty knowingly and voluntarily. Our supreme court has recognized that "[t]he validity of a guilty plea is a mixed question of law and fact." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). As such, our review of whether the Petitioner entered valid guilty pleas in this case is also de novo, applying a presumption of correctness only to the post-conviction court's findings of fact. *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020).

When a defendant enters a guilty plea, he or she "waives several constitutional rights, including the privilege against self-incrimination, the right to a trial by jury, and the right to confront his accusers." *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). As such, the Due Process Clause of the Fourteenth Amendment requires that "a guilty plea must be entered knowingly, voluntarily, and intelligently." *Ward*, 315 S.W.3d at 465; *see Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016). Where a defendant's guilty plea "'is not equally voluntary and knowing, it has been obtained in violation of due process' and

must be set aside." *State v. Nagele*, 353 S.W.3d 112, 118 (Tenn. 2011) (quoting *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993)). Thus, a post-conviction petitioner's claim "which asserts that a plea was not voluntarily and knowingly entered, implicates his due process rights and therefore falls squarely within the ambit of issues appropriately addressed in a post-conviction petition." *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000).

To determine whether a guilty plea was knowingly, voluntarily, and intelligently entered, a court must look to "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A defendant cannot make this voluntary and intelligent choice if the decision "results from, among other things, ignorance or misunderstanding." *Nagele*, 353 S.W.3d at 118. Thus, before a trial court may accept a guilty plea, it must canvass "'the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.'" *Garcia*, 425 S.W.3d at 262 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).

Ultimately, the issue of "whether an accused's plea of guilty was voluntarily, understandingly, and knowingly entered is to be determined based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Rigger v. State*, 341 S.W.3d 299, 308-09 (Tenn. Crim. App. 2010). Our supreme court has recognized several factors that may inform this analysis, including the following:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006).

The Petitioner argues that because of the ineffective assistance of counsel, he did not understand the differences between the sex offender registry and community supervision for life; that he did not know what elements the State would have needed to prove to sustain convictions of the charged offenses at trial; and that he thought he would have to serve six months in confinement at most if he pled guilty. The Petitioner maintains that, absent the ineffective assistance of counsel, he would not have pled guilty.

"[D]uring the plea bargain process, as at all critical stages of the criminal process, counsel has the responsibility to render effective assistance as required by the Sixth Amendment." *Nesbit*, 452 S.W.3d 787. Thus, plea counsel's "effectiveness may implicate

- 18 -

the requirement that a plea must be entered knowingly and voluntarily, *i.e.*, that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea." *Johnson v. State*, No. W2015-02498-CCA-R3-PC, 2017 WL 192710, at *4 (Tenn. Crim. App. Jan. 17, 2017).

Earlier in this opinion, we held that the Petitioner failed to establish that he received the ineffective assistance of counsel. Accordingly, we conclude that the record does not preponderate against the post-conviction court's findings that the Petitioner's guilty pleas were not rendered unknowing or involuntary due to any alleged ineffective assistance by counsel. *Payne v. State*, No. E2021-01017-CCA-R3-PC, 2022 WL 3683793, at *8 (Tenn. Crim. App. Aug. 25, 2022).

The Petitioner does not allege that any other factor impeded the knowing and voluntary nature of his guilty plea. The post-conviction court found that during the guilty plea, the trial court thoroughly questioned the Petitioner to ensure he understood his rights and that he was waiving those rights by pleading guilty. The post-conviction court also found that the trial court and plea counsel advised the Petitioner of his options and that the Petitioner assured the trial court that he had not been forced or coerced and had chosen to plead guilty. This court has noted that "[a] petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" *Wilbanks v. State*, No. E2014-00229-CCA-R3-PC, 2015 WL 354773, at *10 (Tenn. Crim. App. Jan. 28, 2015) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Based upon the foregoing, the post-conviction court found that the Petitioner's guilty pleas were knowingly and voluntarily entered. The record does not preponderate against this finding.

## CONCLUSION

In summary, the Petitioner has failed to show that the post-conviction court erred in determining that he did not receive the ineffective assistance of counsel or that his guilty pleas were knowingly and voluntarily entered. Accordingly, we affirm the denial of post-conviction relief.

_____
TOM GREENHOLTZ, JUDGE